# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KEITH WILLIAMS,

     Petitioner,                  Civil No. 2:08-10472

                                    HONORABLE DENISE PAGE HOOD

v.                            UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS

Keith Williams, ("Petitioner"), presently confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for second-degree murder, M.C.L.A. 750.317; and felony-firearm, M.C.L.A. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was originally charged with first-degree murder and felony-firearm. Following a jury trial in the Wayne County Circuit Court, petitioner was found guilty of the lesser included offense of second-degree murder and guilty as charged of felony-firearm.

This Court recites verbatim the relevant facts relied upon by the trial court in denying petitioner's post-conviction motion for relief from judgment, which are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g.*

*Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Dr. Leigh Hlvaty, an assistant Wayne County Medical Examiner noted three graze gunshot wounds on the exterior of Mr. Hart. The grazes were consistent with the person having his hand raised and extended. The wound track was from front to back, left to right and slightly down. The bullet passed through the armpit though major blood vessels severing an artery and went to the spinal column. The cause of death was a single gunshot wound which caused extensive blood loss. The manner of death was homicide.
>
> Detroit Police Investigator Ronald Tate went to the location of 9330 Sorrento in the City of Detroit on October 3, 1999 because of a reported shooting. He saw blood on the sidewalk as he walked into the house. There was a pool of blood inside the house. The victim, Mr. Hart, had been transported to the hospital. The evidence technician, Police Officer Frank Horan, took photographs of the scene, gathered ammunition and a rifle stock.
>
> Nadine Hart, the wife of Charles Hart, lived on Sorrento but was separated from her husband. She identified Keith Williams, who she knew from church, as well as his brother, Kelyn Williams. Keith and Kelyn lived in the basement of her home at 9330 Sorrento with her children and herself for a number of weeks. Keith and Kelyn were waiting for an apartment to be prepared for their occupancy. Mrs. Hart wanted Keith to move out. She claimed Keith argued with Samuel and Sherry (her children), herself and even with his own brother, Kelyn.
>
> Charles Hart came to the home on October 3rd and wanted to speak with Keith and Kelyn. They came upstairs and they talked in Samuel's room. Nadine stood in the hallway outside of the bedroom. Charles told Keith and Kelyn he did not want any more problems with either his children or his wife. He said he would appreciate it if they would be gone by Monday and he could help them move because he had a truck. Charles was not screaming at either one of them, nor did he speak in a loud voice. The conversation lasted less than five minutes. Charles Hart did not have a weapon.
>
> Kelyn left and went to the kitchen and Keith went to the basement.

2

Nadine Hart was still standing in the hallway when she heard Keith come up the stairs saying, "What MF, what MF?" Keith had a rifle. He pointed the rifle at Charles and called him a "mother fucker." He then shot Charles one time. The rifle was pointed directly at Charles. Keith did not give Charles a chance to respond. Charles did not have a chance to defend himself. Charles fell to the floor and there was blood everywhere.

Keith Williams ran out of the kitchen and out the back door with the rifle,

Kelyn Williams testified he lived in the basement at 9330 Sorrento with his aunt Nadine Hart. His brother, Keith, lived there too. Nadine let them sleep anywhere in the house. Keith and Nadine had troubles while they resided in the same house. Kelyn knew they were required to move out, although they were not given a deadline. Kelyn said Charles wanted to talk to him and Keith in Sam's bedroom. Charles addressed the fact that they disrespected his wife and asked them if they were planning to move. Keith tried to leave the room, but Mr. Hart told him he was not done speaking to them.

Kelyn went to the kitchen and his brother went downstairs for about two minutes and came back upstairs with a 30/30 Winchester rifle in his hand. Kelyn said to him "it's not worth it" and Keith pushed him aside and went to where Charles was standing. Kelyn heard a single shot and Charles fell to the floor. Keith ran past Kelyn with the rifle in his hand and Keith told him he has to hurry and get out of here. Keith changed his clothes and ran out the door with the gun in his hand. Charles did not have a weapon.

*People v. Williams,* No. 00-000326-01, * 2-5 (Wayne County Circuit Court, July 16, 2007).

In addition to this testimony, Sean Ellis, the victim's son, testified that he was upstairs in the house when he heard a gunshot. Prior to hearing this gunshot, Ellis had not heard any yelling, screaming, or fighting downstairs. Ellis ran downstairs and saw petitioner standing in the hallway talking to his brother. When Ellis asked petitioner why he shot his father, petitioner told him that the

3

victim had threatened him by suggesting that the men "take the matter outside."

Petitioner then fled from the house, taking his gun with him.  Ellis insisted that the

victim did not have a weapon.

Samuel Hart, the victim's other son, testified that his father spoke to

petitioner and his brother in his bedroom while he stood outside the door.

Samuel Hart testified that the conversation lasted about five minutes, and that

there was no screaming or yelling coming from the bedroom.  Samuel Hart did

not hear anyone suggest they could take the discussion outside.  Samuel Hart

testified that petitioner and his brother Kelyn left the room.  Kelyn Williams went

to the living room with Samuel Hart, his mother Nadine, and his father Charles.

Petitioner went downstairs to the basement.  Samuel Hart testified that his father

was in the process of leaving the house, when petitioner walked up with a rifle in

his hands.  Kelyn Willams told petitioner not to shoot the victim.  Petitioner turned

around, said "what motherfucker, what" to the victim, and then shot him.

Petitioner then ran out the door.  Samuel Hart testified that his brother Sean Ellis

grabbed his father's keys out of his pocket and fled in his father's car to his

cousin's house because he was so upset.  Samuel Hart testified that his father

was unarmed and never made any threats toward petitioner.

The Michigan Court of Appeals affirmed the conviction. *People v.*

*Williams,*No. 232255(Mich.Ct.App. May 21, 2002).  In lieu of granting leave to

appeal, the Michigan Supreme Court remanded the case to the Michigan Court of

Appeals for reconsideration of petitioner's sentencing issue in light of their

decision in *People v. Babcock,* 469 Mich. 247; 666 N.W.2d 231 (2003). *People v.*

*Williams,* 469 Mich. 916; 673 N.W. 2d 105 (2003).  On remand, the Michigan

Court of Appeals remanded the case to the trial court for resentencing. *People v.*

*Williams,* No. 232255 (Mich.Ct.App. January 29, 2004)(On Remand); *lv. den.* 471

Mich. 884, 688 N.W.2d 507 (2004); *reconsideration den.* 471 Mich. 956, 690

N.W.2d 118 (2004).  Having been originally sentenced to a term of forty to eighty

five years, petitioner was resentenced to a term of three hundred twelve months

to fifty years.  *People v. Williams*, No. 00-000326-1 (Wayne County Circuit Court,

July 16, 2007).

Following resentencing, petitioner filed a *pro se* motion for relief from

judgment pursuant to M.C.R. 6.500, *et. seq.*  The trial court subsequently

appointed appellate counsel for petitioner, who filed a supplemental motion for

relief from judgment on his behalf.  The trial court denied petitioner's post-

conviction motion. *People v. Williams,* No. 00-000326-1(Wayne County Circuit

Court, July 16, 2007).  The Michigan appellate courts denied petitioner leave to

appeal. *People v. Williams,* No. 279642 (Mich.Ct.App. September 17, 2007); *lv.*

*den.* 480 Mich. 1012, 743 N.W.2d 49 (2008).

On January 31, 2008, petitioner filed his petition for writ of habeas corpus,

in which he listed the five following claims for habeas relief:

I. The convictions and sentence under which Defendant is imprisoned

5

are unlawful and void because of multiple violations of Defendant's right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States, violation of equal protection of the law guaranteed by the Fourteenth Amendment, and violation of the right to the effective assistance of counsel protected by the Sixth Amendment. These violations are not mere irregularities, but are major constitutional violations which cast significant doubt on the fairness of Defendant's trial and, more importantly, call into question the verdicts.

II. Defendant was convicted of murdering Charles Hart Jr.  The conviction was based almost entirely upon the testimony of Nadine Hart and her sons, Samuel L. Hart, and Shawn Ellis.  They testified that the Defendant shot Charles Hart Jr. as both men stood erect on a flat and level floor, for no reason.  Based on that testimony, Defendant was convicted of the lesser charge of second-degree murder.  Shawn Ellis himself has a criminal history and since been prosecuted and convicted of several felonies, and may be still serving time within the Michigan prison system.  Kelyn Williams, another witness who testified against Defendant, also has a criminal history and has since recanted his trial testimony via a written statement to Defendant's ex-appellate attorney, Ms. Chari K. Grove.

III. Defendant was denied his Fourteenth Amendment right to due process and the right to be convicted by proof beyond a reasonable doubt when the court permitted the State's witnesses to prosecute and convict Defendant with false, incredible, and impossible testimony.

IV. The court does not have jurisdiction to permit the conviction of a criminal defendant with false, incredible, and impossible testimony, and thus without due process of law.

V. Defendant was denied effective assistance of counsel because of his attorney's failure to make certain motions, object to incredible testimony, seek expert assistance, investigate medical findings, investigate witnesses, and to argue these errors on appellate review. These errors were so egregious they worked to deprive Defendant of a fair trial.

Respondent filed an answer to the petition for writ of habeas corpus, which

was construed as a motion to dismiss on the basis that the claims were barred by

6

procedural default.  Respondent argued that petitioner's claims were procedurally defaulted because he never presented his claims to the Michigan courts on either his appeal of right or in his post-conviction motion and because petitioner no longer had any available state remedies left to exhaust these claims, he was unable to obtain habeas relief on them.

The Court granted respondent's motion to dismiss in part, finding that petitioner never raised any claims in the state courts involving trial counsel's failure to make certain motions, failure to object to incredible testimony, failure to seek expert assistance, failure to investigate medical findings, failure to investigate witnesses, and appellate counsel's failure to argue these errors on appellate review.  The Court also concluded that petitioner had failed to raise any equal protection of law claim in the state courts.  The Court ruled that these claims were procedurally defaulted.

The Court ruled that to the extent that petitioner raised in his petition the ineffective assistance of counsel claims that he and his counsel raised in their post-conviction applications, petitioner would be permitted to raise these claims in his habeas petition.  The Court also denied respondent's motion to dismiss petitioner's second, third, and fourth claims because these claims were raised by petitioner in his own motion for relief from judgment which he raised in the trial court and in the Michigan appellate courts.  This Court further ruled that petitioner could amend his petition to include the three claims that were raised by appellate

7

counsel as part of petitioner's appeal as of right.  Finally, the Court directed

respondent to file a supplemental answer to the petition for writ of habeas corpus,

which was filed on February 28, 2011.  *See* December 30, 2010 Order and

Opinion [Docket No.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied the effective assistance of counsel where trial counsel was ineffective for failing to object to the prosecutor's closing argument and appellate counsel was ineffective for failing to investigate scientific evidence in support of his self-defense claim.

II. Defendant was convicted of murdering Charles Hart Jr.  The conviction was based almost entirely upon the testimony of Nadine Hart and her sons, Samuel L. Hart, and Shawn Ellis. They testified that the Defendant shot Charles Hart Jr. as both men stood erect on a flat and level floor, for no reason.  Based on that testimony, Defendant was convicted of the lesser charge of second-degree murder.  Shawn Ellis himself has a criminal history and since been prosecuted and convicted of several felonies, and may be still serving time within the Michigan prison system.  Kelyn Williams, another witness who testified against Defendant, also has a criminal history and has since recanted his trial testimony via a written statement to Defendant's ex-appellate attorney, Ms. Chari K. Grove.

III. Defendant was denied his Fourteenth Amendment right to due process and the right to be convicted by proof beyond a reasonable doubt when the court permitted the State's witnesses to prosecute and convict Defendant with false, incredible, and impossible testimony.

IV. The court does not have jurisdiction to permit the conviction of a criminal defendant with false, incredible, and impossible testimony, and thus without due process of law.

V. The trial court erred in refusing to give the defendant's requested instruction on the lesser cognate included offense of statutory involuntary manslaughter, as there was sufficient evidence in the record to support the verdict on that included offense.

VI. The trial court erred in failing to instruct on defendant's self-defense theory.

VII. Defendant was denied his due process right to a fair trial where in his closing argument, the prosecutor argued highly prejudicial facts not in evidence and denigrated the defense.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

9

not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme

10

Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

### A.  The procedural default issue.

Respondent first contends that petitioner's first four claims are

11

procedurally defaulted because they were never properly exhausted at the state court level and petitioner no longer has an available state court remedy with which to exhaust these claims.  The Court agrees in part with respondent.

Respondent contends that the portion of petitioner's first claim concerning counsel's alleged ineffectiveness in failing to object to prosecutorial misconduct is unexhausted, because petitioner failed to raise this issue before the trial court in his initial motion for relief from judgment.  Respondent, however, has not provided this Court with a copy of the motion for relief from judgment that petitioner filed before the trial court.  In the absence of this motion, it is not clear whether petitioner raised this portion of his ineffective assistance of counsel claim before the trial court.

This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, because of the uncertainty over whether petitioner raised this portion of his ineffective assistance of trial counsel claim with the trial

12

Court, the interests of judicial economy are best served by addressing the merits of this portion of petitioner's claim.

Respondent contends that the remainder of petitioner's first claim and his second through fourth claims are unexhausted and procedurally defaulted because they were not raised by petitioner in his post-conviction appeal before the Michigan Court of Appeals.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  Although exhaustion is not a jurisdictional matter, "it is a threshold question that must be resolved" before a federal court can reach the merits of any claim contained in a habeas petition. *See Wagner v. Smith,* 581 F. 3d 410, 415 (6th Cir. 2009).  Therefore, each claim must be reviewed by a federal court for exhaustion before any claim may be reviewed on the merits by a federal court. *Id.*

The denial of a motion for relief from judgment is reviewable by the Michigan Court of Appeals and the Michigan Supreme Court upon the filing of an application for leave to appeal. M.C.R. 6.509; M.C.R. 7.203; M.C.R. 7.302. *See Nasr v. Stegall,* 978 F. Supp. 714, 717 (E.D. Mich. 1997).  A criminal defendant in Michigan must appeal the denial of a post-conviction motion to the Michigan Court of Appeals and the Michigan Supreme Court in order to satisfy the

13

exhaustion requirement of raising his claims at all levels of state court review. *See Mohn v. Bock,* 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002)(citing *Dombkowski v. Johnson*, 488 F. 2d 68, 70 (6th Cir.1973)).

In the present case, petitioner never presented the portion of his first claim involving appellate counsel's failure to investigate scientific evidence in support of his self-defense argument or his second through fourth claims to the Michigan Court of Appeals on his post-conviction appeal.  Although petitioner subsequently raised these claims in his application for leave to appeal before the Michigan Supreme Court, raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Because petitioner failed to present these claims in his post-conviction appeal with the Michigan Court of Appeals, his subsequent presentation of these claims to the Michigan Supreme Court did not satisfy the exhaustion requirement for habeas purposes. *See Warlick v. Romanowski,* 367 Fed. Appx. 634, 643 (6th Cir. 2010); *Farley v. Lafler,* 193 Fed.Appx. 543, 549 (6th Cir. 2006)*; Schroeder v. Renico,* 156 F. Supp. 2d 838, 844, n. 5 (E.D. Mich. 2001).

Unfortunately, petitioner no longer has any available state court remedies with which to exhaust these claims.  Under M.C.R. 6.502(G)(1), a criminal

14

defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 Fed.Appx. 781, 783 (6th Cir. 2007); *Hudson v. Martin,* 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust these claims. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F. 3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, fn. 3.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case,

15

where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner appears to argue that any default should be excused because the attorney who was appointed to represent him by the trial court on his post-conviction appeal failed to include these claims in the brief that post-conviction counsel filed with the Michigan Court of Appeals.

In a criminal proceeding in which a habeas petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *See Coleman*, 501 U.S. at 752-53. Because there is no constitutional right to the effective assistance of counsel in state post-conviction proceedings, an attorney's failure to raise an issue in a state post-conviction motion cannot establish cause to excuse a procedural default. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *See also Abdus-Samad v. Bell,* 420 F.3d 614, 632 (6th Cir. 2005)*; Gulertekin v.*

16

*Tinnelman-Cooper,* 340 F. 3d 415, 425 (6th Cir. 2003).  Petitioner has failed to establish cause to excuse the default of his unexhausted claims.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding these claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider petitioner's unexhausted claims as grounds for a writ of habeas corpus in spite of the procedural default.  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review these claims on the merits. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).

Petitioner is not entitled to relief on his claim that appellate counsel was ineffective for failing to investigate scientific evidence in support of his self-defense claim, because petitioner has failed to produce any affidavits or offers of proof from any experts or other witnesses to show that there is any scientific

17

evidence that would support his self-defense claim. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Although petitioner alleges that his former appellate counsel has withheld this information from him, he has also provided no evidence in support of this allegation.

Petitioner argues in his second, third, and fourth claims that there was insufficient evidence to convict him because the witnesses committed perjury and were not credible. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Any insufficiency of evidence claim that rests on an allegation of the witnesses' credibility, which is the province of the finder of fact, does not entitle a habeas petitioner to relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

Petitioner, however, contends that the evidence was insufficient in this case, because it was physically impossible for the shooting to have taken place the way that Nadine and Samuel Hart described the shooting. Petitioner points

18

to the fact that Nadine Hart testified that while the victim stood erect, petitioner fired the rifle from his hips while the gun was pointed down towards the victim's legs, when the shot was fired.  Samuel Hart testified that the victim was standing erect at the time of the shooting, but that petitioner shot the rifle from the waist while the rifle was pointed straight at the victim.  Petitioner notes that the medical examiner testified that if the victim was standing upright at the time of the shooting, then the petitioner would have to have been above him or at least have the weapon above him to inflict the type of wound seen in this case.

Under the concept of what is known as the "physical facts rule", the testimony of a witness which is opposed to the laws of nature, or which clearly conflicts with principles that are established by the laws of science, cannot be given any probative value by a jury. See *Harris v. General Motors Corp.*, 201 F. 3d 800, 803 (6th Cir. 2000)(internal quotation omitted).

> This Court has previously noted:
>
> In examining a claim of insufficiency of evidence in habeas corpus, a federal court must presume that the jury's findings in evaluating the credibility of the witnesses is correct and may ignore the testimony only when it finds it to be "inherently incredible".  Such a finding may be made only where the testimony is 'unbelievable on its face'; i.e. testimony as to facts that the witness physically could not possibly have observed or events that could not have occurred under the laws of nature.  Inconsistencies in a witness' testimony, however, do not render that witness' testimony to be inherently incredible.
>
> *Malcum v. Burt,* 276 F. Supp. 2d at 686 (internal citations omitted).

The "physical facts rule", which provides that testimony should be disregarded because it is allegedly contrary to physical facts, has no application where variable or doubtful estimates are made with respect to the facts. *See State v. Davis*, 504 S.W. 2d 221, 223 (Mo.App. 1973).  The testimony in a murder case with respect to a shooting cannot be expected to be precise in every detail and it is sufficient if the witness can give a generally acceptable portrayal of what occurred. *Id.*  In *Davis,* the Missouri Court of Appeals held that the comparison between the eyewitness' testimony as to the manner in which the defendant held the gun and the position in which the defendant and the deceased stood in relation to each other at the time of the firing of shots and the testimony of the pathologist concerning the entry points and path of bullets in the deceased's body failed to show that the eyewitness' testimony should be totally disregarded as contrary to the physical evidence, because the eyewitness' testimony was not definitive but rather consisted of approximations. *Id.*  In so ruling, the court in *Davis* relied on the First Circuit case *of Russell v. Gonyer*, 264 F. 2d 761, 762 (1st Cir. 1959), in which the First Circuit noted:

> It is well known that a lay witness' estimates of time, speed and distance, particularly those made in a flash at the moment of occurrence of a dramatic event, are almost certain to be inaccurate and for that reason are not to be relied upon implicitly.  With this in mind the court was entitled to accept the testimony of the witness as painting a general picture of the event, even though his testimony could not be made to coincide in every detail with established physical facts."
> *Id.*

20

In the present case, Nadine and Samuel Hart were making estimates about the positions of the victim, petitioner, and the murder weapon while they were witnessing a traumatic event, in which they watched their ex-husband and father get shot in the "flash of the moment."  For example, Nadine Hart testified that she was "maybe two feet" away from petitioner, and the victim was "almost, about the same" distance from petitioner.  October 24, 2000 Trial Tr. at 191:17-22. Samuel Hart testified that he knew that he was standing next to his father, the victim, but could not recall whether he was standing to his left or to his right. October24, 2000 Trial Tr. at 37:9-16. In such a circumstance, the witnesses' testimony concerning the location of the victim, petitioner, and the rifle were approximations, therefore, the "physical facts" rule is inapplicable to petitioner's case.

To the extent that petitioner is bringing an independent perjury claim, he would not be entitled to relief.  The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the

21

statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story does not establish perjury. *Malcum,* 276 F. Supp. 2d at 684(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has failed to establish that the witnesses committed perjury. Petitioner claims that the eyewitnesses' description of the prospective positions of the victim and petitioner when the shooting took place are contrary to the medical examiner's findings concerning the entry of the bullet into the victim's body and the trajectory.  This is insufficient to establish a perjury claim. *Coe*, 161 F.3d at 343 ("mere inconsistencies" do not show indisputable falsity).  In order to establish that testimony was falsely given, it is not enough for a defendant to simply show that the allegedly false testimony has been challenged by another

22

witness. *See United States v. Brown*, 634 F. 2d 819, 827 (5th Cir. 1981). More importantly, assuming that the eyewitnesses lied about how and where the victim and petitioner were positioned at the time of the shooting, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that the eyewitnesses had testified falsely. *See Rosencrantz v. Lafler,* 568 F. 3d 577, 587 (6th Cir. 2009); *cert. den.* 130 S. Ct. 2401 (2010).

The Court concludes that the portion of petitioner's first claim involving the alleged ineffective assistance of appellate counsel and his second through fourth claims are procedurally defaulted and meritless.

**B.  Claim # 1 and # 7.  The ineffective assistance/prosecutorial misconduct claims.**

As part of his first claim, petitioner contends that counsel was ineffective for failing to object to prosecutorial misconduct.  In his seventh claim, petitioner claims that he was deprived of a fair trial because of prosecutorial misconduct. For purposes of judicial economy, this Court will also address petitioner's prosecutorial misconduct claim (Claim # II) along with this part of his ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002).

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."

23

*Berger v. United States*, 295 U.S. 78, 88 (1935).  When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993).  When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000).  If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.*  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F. 3d at 1355-56; *See also Simpson v. Warren,* 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009).  Moreover, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is

24

necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir.

2006)(quoting *Donnelly*, *v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  In

deciding whether prosecutorial misconduct mandates that habeas relief be

granted, a federal court must apply the harmless error standard. *See Pritchett v.*

*Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997).

Petitioner first claims that the prosecutor improperly vouched for the

credibility of the witnesses.  Petitioner complains of the following remarks:

> Why do I point this out?  I'm going to be asking you, based on what
> you've seen, to believe every word that Mrs. Hart told you from that
> witness stand.  That's why I'm spending this time with you going over
> the big picture.  Because, you've not only seen her, but if you use your
> common sense and examine the background that this case is coming
> from, the conclusion you should reach is that every word that Nadine
> Hart told us from that witness stand is words that we accept as true
> and accurate and base our verdict on.

(Tr. 10/24/00, p. 74).

> Let's talk about Kelyn for a little bit.  There was a point in time I had to
> go through [his] statement with him...God knows that had to have been
> hard to testify against your own flesh and blood...[T]here was a
> hesitancy perhaps wanting to try and hold back a little bit for his
> brother.  I think you would have observed that in the way he started
> testifying..As time went on, as he saw [his] statement, I contend that
> what you heard was the truth from him.  Especially, with regards to the
> adoption, when he finally started to adopt his statement.

(*Id.* at pp. 78-79).

> The facts that you should find in this case are, basically, the facts that
> I have just outlined to you.  It should start from the testimony of the
> following witnesses.  Let's start off with first...with Dr. Hlevaty, who
> testified as to the cause of death and the manner of death.  How the
> wounds were inflicted.

(*Id.* at pp. 80-81).

The facts in this case, I contend, [are] from the testimony that you heard on the witness stand...The testimony of the witnesses..are all consistent.  They testified to you truthfully.  They testified to you as to exactly what happen in this case.

(*Id.* at p. 81).

But, the testimony of the witnesses, the members of the family in this case, are all consistent. They testified to you truthfully. They testified to you as to exactly what happened in this case.

[*Id.* at p. 81].

You've heard all of the witnesses in this case.  You've seen their demeanor on the stand. You've seen Mrs. Hart testify.  You've seen the children.  You've seen Sam testify.  Was their testimony exactly word for word like every statement that they gave?  Of course not. But, is there any doubt in your mind as to exactly how these events happened? No.

(*Id.* at pp. 83-84).

The defense attacks the credibility of Nadine Hart... Where did she lie to you?  Ms. Hart did not lie to you.

(*Id.* at p. 99).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations

omitted).  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F. 3d at 537 and n. 43.  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

The prosecutor's comments about the witnesses' did not amount to improper vouching, because the prosecutor was noting the consistency between their testimony and other evidence. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *See also See also Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006).  The prosecutor did not imply that he had any special knowledge of facts that had not been presented to the jury or of the credibility and truthfulness of witnesses and their testimony.  Numerous cases have held that a

27

prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie).  In any case, any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation, in light of the fact that the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. (Tr. 10/24/2000, pp. 110-12). *Byrd,* 209 F. 3d at 537-38.

Petitioner next contends that the prosecutor improperly argued facts not in evidence by arguing that petitioner loaded his weapon before he shot the victim. Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d

689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd*, 209 F. 3d at 535. However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, there was some record support for the prosecutor's argument. Officer Frank Horan testified that he recovered a box of 30/30 rounds with six live bullets in the box, which were found alongside two casings on the kitchen table. It could be reasonably inferred that petitioner loaded his rifle sometime before the shooting. Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

The prosecutor made this argument to urge the jurors to find that petitioner acted with premeditation and deliberation, so as to find him guilty of first-degree murder. However, as the Michigan Court of Appeals noted, the jury acquitted petitioner of this charge and found him guilty of the lesser offense of second-degree murder. The fact that the jury acquitted petitioner of first-degree premeditated murder and convicted him of the lesser offense of second-degree murder shows that the jury must not have been swayed by the prosecutor's statement. *See e.g. Shacks v. Tessmer,* 9 Fed. Appx. 344, 350 (6th Cir. 2001).

Petitioner further appears to argue that the prosecutor misrepresented facts by arguing in his summation that the medical examiner testified that the victim was shot while trying to defend and shield himself from being shot. Petitioner claims that this was a misrepresentation of the medical examiner's testimony, because the medical examiner testified at trial that she did not know what position that the victim was in when he was shot. [1]

At trial, Dr. Hlevaty testified that the victim's arm was raised at the time he was shot. (Tr. 10/23/2000, pp. 128, 130).  On cross-examination, Dr.  Hlevaty testified that she could state with medical certainty that the victim's left arm was raised at the time he was shot. (*Id.* at p. 136).  Dr. Hlevaty admitted that she did not know what position the victim was in at the time he was shot, that is, she did not know whether he was sitting or standing. (*Id.* at pp. 138, 139-40).  On redirect examination, Dr. Hlevaty testified that her opinion that the victim's arm was raised at the time he was shot was based on the location of the two graze wounds and the irregularity of the entrance wound to the victim's armpit. (*Id.* at p. 142).

In the present case, Dr. Hlevaty testified that the victim's arm was raised up at the time of the shooting.  It could be reasonably inferred from this evidence that the victim was trying to shield or defend himself at the time of the shooting.

---

[1]   See Reply Brief in Support of Petition for Writ of Habeas Corpus, pp. 31-32 [This Court's Dkt. # 13].

30

Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive Petitioner of a fair trial. *See Henry*, 545 F. 3d at 377.

Finally, petitioner claims that the prosecutor denigrated defense counsel by referring to the defense's closing argument as a "McGuffin."  The prosecutor explained to the jurors that a "McGuffin" was a technique used by Alfred Hitchcock in his films where a misleading fact was deliberately planted to mislead the audience.  The Michigan Court of Appeals rejected petitioner's claim:

> In this case, the prosecutor's comments were made in response to defense counsel's closing argument. Defense counsel attempted to emphasize alleged discrepancies in the witness' testimony and questioned why certain tests were not performed on the victim's body. In addition, defense counsel attempted to argue a theory of self-defense, which was unsupported by the evidence introduced at trial. We conclude that it was not improper for the prosecutor to respond to the defense's argument, and we find no plain error.

> *Williams,* Slip. Op. at * 3.

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. 469, 480 (6th Cir. 2007)(quoting *United States v. August*, 984 F. 2d 705, 715 (6th Cir. 1992)).  A prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury

31

is not an improper disparagement of defense counsel. *Id.*

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx. 445, 447 (6th Cir. 2005). The prosecutor's comments were simply not so incendiary so as to inflame the jury's passion or distract them from determining petitioner's guilt or innocence. *See Davis v. Burt,* 100 Fed. Appx. 340, 348 (6th Cir. 2004). Finally, the prosecutor's remarks were brief and fairly isolated and were part of a larger twenty-five page argument that focused on the evidence in the case. (Tr. 10/24/2000, pp. 69-85; 97-105). The trial court instructed the jury that the lawyers' arguments were not evidence. (*Id.* at p. 110). The prosecutor's remarks were relatively isolated, were not extensive, and were only a part of a closing argument that focused heavily on summarizing the evidence presented at trial. *Byrd*, 209 F. 3d at 532. When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's comments did not render the entire trial fundamentally unfair. *Id.* at 533.

Petitioner was not deprived of a fair trial because of prosecutorial misconduct. Accordingly, petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

32

The Court rejects petitioner's related ineffective assistance of counsel claim. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

To show prejudice under *Strickland* for failing to object to prosecutorial

33

misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper comments and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to the alleged prosecutorial misconduct. *Slagle,* 457 F. 3d at 528. Petitioner is not entitled to habeas relief on his first and seventh claims.

### C. Claims # 5 and # 6. The jury instruction claims.

Petitioner next contends that the trial court violated his right to due process by failing to give several jury instructions that had been requested by the defense.

In his fifth claim, petitioner contends that the trial court erred in refusing to instruct the jurors on the offense of statutory involuntary manslaughter as a lesser included offense of second-degree murder.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(citing *to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). A state trial court's failure to give the jury an instruction on a lesser

34

included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.  Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6ᵗʰ Cir. 2001).  The failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6ᵗʰ Cir. 1990); *See also Scott v. Elo,* 302 F. 3d 598, 606 (6ᵗʰ Cir. 2002).

In *Scott v. Elo,* the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter. *Id.*

In the present case, the trial court judge's failure to instruct the jurors on the lesser included offense of involuntary manslaughter would not entitle petitioner to habeas relief.  Moreover, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, there was not even a "modicum of evidence" that the gun accidentally discharged when petitioner fired it at the victim, that the victim attacked petitioner, or that the victim was armed at the time of the shooting. *Williams,* Slip. Op. at * 2.  Because the evidence at trial did not support the giving of an instruction on statutory manslaughter, the trial court's

35

failure to do so did not deprive petitioner of a fair trial. *See Scott v. Elo,* 302 F. 3d at 605-06.

In his sixth claim, petitioner contends that the trial court erred in refusing to give the jurors an instruction on the defense of self-defense.

A defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "[A] necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow,* 288 F. 3d 846, 852 (6th Cir. 2002). A defendant is therefore entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988).  A state trial court's failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the Due Process Clause. *Taylor,* 288 F. 3d at 851.

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the

36

time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999)(citing to

*People v. Heflin*, 434 Mich. 482; 456 N. W. 2d 10 (1990)).  To be lawful

self-defense, the evidence must show that: (1) the defendant honestly and

reasonably believed that he was in danger; (2) the danger feared was death or

serious bodily harm or imminent forcible sexual penetration; (3) the action taken

appeared at the time to be immediately necessary; and (4) the defendant was

not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D.

Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492

(1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993);

*People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).  Under

Michigan law, a defendant is not entitled to use any more force than is

necessary to defend himself. *Johnigan,* 207 F. Supp. 2d at 609 *(*citing *Kemp*,

202 Mich. App. at 322).  "[T]he law of self-defense is based on necessity, and a

killing or use of potentially lethal force will be condoned only when the killing or

use of potentially lethal force was the only escape from death, serious bodily

harm, or imminent forcible sexual penetration under the circumstances."

*Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

   In the present case, the trial court's refusal to instruct the jury on the

defense of self-defense did not deprive petitioner of a fair trial, because there

was insufficient evidence presented at trial to support the giving of such an

instruction.  As the Michigan Court of Appeals indicated in their opinion, there

was no evidence that the victim was armed at the time of the shooting or that

petitioner believed that he was in danger.  Although the victim had a

conversation with petitioner prior to the shooting, the conversation ended before

petitioner obtained the rifle. *Williams,* Slip. Op. at * 2.  Additionally, there was

some evidence that petitioner shot the victim as the victim was leaving the

house.  The evidence failed to show that petitioner was in imminent danger of

death or great bodily harm when he retrieved his rifle and shot the victim.

Because there was no evidence to support petitioner's self-defense claim,

the trial court's failure to give an instruction on the defense of self-defense did

not deprive petitioner of his constitutional right to due process. *Allen v. Morris,*

845 F. 2d 610, 616-17 (6th Cir. 1988); *Melchior v. Jago,* 723 F. 2d 486, 493-94

(6th Cir. 1983).  Petitioner is not entitled to relief on his fifth and sixth claims.

## IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's

claims did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the

United States Supreme Court.  Nor did the state court adjudication result in a

decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  This Court concludes that

the petitioner is not entitled to federal habeas relief on the claims contained in

his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters

39

a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.  The petitioner may, however, proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that the petitioner will be **GRANTED** leave to appeal *in forma pauperis.*


s/Denise Page Hood
United States District Judge

Dated:  August 24, 2011

I hereby certify that a copy of the foregoing document was served upon Keith Williams, #324866, 34625 26 Mile Road, New Haven, MI 48048 and  counsel of record on August 24, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager